[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 12-15805
Non-Argument Calendar
_____

Agency No. A079-400-388

XIA CHEN,

Petitioner,

versus

US ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals
_____

(August 13, 2013)

Before MARCUS, PRYOR and KRAVITCH, Circuit Judges.

PER CURIAM:

Xia Chen, a native and citizen of China, petitions for review of the denial of her motion to reopen and to stay her removal from the United States based on a change in country conditions.  8 U.S.C. § 1229a(c)(7)(C)(ii).  We deny the petition.

In 2001, Chen entered the United States without a valid entry document. During an interview with an immigration official, Chen disclaimed membership in any religious or political group in China and stated that a powerful businessman had harassed her and tried to rape her after she refused to marry him.  Later, Chen applied for asylum, withholding of removal, and relief under the United Nations Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment on the grounds that she feared persecution because she had practiced Falun Gong and she had refused to marry the son of a local police chief.  See 8 U.S.C. §§ 1158(a), 1231(b)(3).  At her removal hearing, Chen testified about being arrested and imprisoned for practicing Falun Gong and then being slapped and kicked by police officers after she refused to marry the son of the chief of police.

On September 11, 2006, the Board of Immigration Appeals affirmed the denial of Chen's application for asylum and other relief.  The Board agreed with the finding of the immigration judge that Chen's allegations about being persecuted for practicing Falun Gong were not credible.  Chen filed a motion for reconsideration, which the Board denied.

On April 9, 2012, Chen moved to reopen and stay her removal proceedings. Chen alleged that her motion, although untimely, was exempt from the time limitation because she had converted to Christianity and the persecution of unregistered Christian groups had increased in China since the close of her removal proceedings.  Chen attached to her motion copies of the 2009 Country Report, other annual reports, and newspaper articles about the repression of one unregistered church, Shouwang; a certificate stating that she had been baptized in November 2011; a letter regarding her attendance and approval for membership at the Melbourne Chinese Christian and Missionary Alliance Church; and her affidavit averring that, if she returned to China, she was "only interested in attending 'underground churches.'"

The Board of Immigration Appeals denied Chen's motion to reopen as untimely.  The Board found that Chen's "practice of religion in the United States reflect[ed] a change in her personal circumstances" and that her "evidence [was] not sufficient to demonstrate that the treatment of Christians in China [had] materially changed, that the Chinese government [was] or [would] become aware of her newly-adopted religious practice, or that she [would] become a specific target for persecution in China on the basis of [her] religion."  The Board "concluded that [Chen] [h]ad not established a change in circumstances or country

3

conditions . . . so as to exempt her motion from the time limitation on motions to reopen."

We review the denial of a motion to reopen for an abuse of discretion. Jiang v. U.S. Att'y Gen., 568 F.3d 1252, 1256 (11th Cir. 2009). "Our review is limited to determining whether the [Board] exercised its discretion in an arbitrary or capricious manner." Id. A motion to reopen must be filed within 90 days of the final order of removal, 8 U.S.C. § 1229a(c)(7)(C)(i), but "[t]here is no time limit on the filing of a motion . . . based on changed country circumstances arising in the country of nationality . . . if such evidence is material and was not available and would not have been discovered or presented at the previous hearing," id. § 1229a(c)(7)(C)(ii). A movant "bears a 'heavy burden,' to [reopen removal proceedings] and must 'present evidence of such a nature that the [Board] is satisfied that if proceedings . . . were reopened, with all attendant delays, the new evidence offered would likely change the result in the case.'" Ali v. U.S. Att'y Gen., 443 F.3d 804, 813 (11th Cir. 2006) (quoting In re Coelho, 20 I. & N. Dec. 464, 473 (BIA 1992)).

The Board did not abuse its discretion when it denied Chen's motion to reopen. Chen's motion was untimely because it was filed more than five years after the final order of removal, and Chen failed to offer evidence sufficient to except her from the 90-day deadline. See 8 U.S.C. § 1229a(c)(7)(C)(i)–(ii). Chen

could not "circumvent the requirement of changed country conditions by demonstrating only a change in her personal circumstances" through her conversion to Christianity.  See Zhang v. U.S. Att'y Gen., 572 F.3d 1316, 1319 (11th Cir. 2009).  And we cannot classify as arbitrary or capricious the finding of the Board that Chen failed to submit material evidence of a change in conditions in China regarding the treatment of Christians in underground churches.  See Jiang, 568 F.3d at 1256.  When Chen applied for asylum, she submitted a copy of the 2004 Country Report, which stated that the Chinese government had recognized Protestantism and Catholicism, but had "sought to restrict religious practice to government-sanctioned organizations" through requiring registration of religious groups, closing and destroying unregistered places of worship, and detaining and harassing members of unregistered churches.  Chen's newly-submitted evidence did not establish that conditions in China had materially changed regarding the treatment of Christians.  The 2009 Country Report and 2009 and 2010 reports of the Congressional-Executive Commission reports state that the government had "continued" its practices of regulating and demolishing unregistered churches and harassing their members.

We **DENY** Chen's petition.

5